## Petition of Evangelical Lutheran Church of Old Goschenhoppen et al.

*Wallace M. Keely*, for petitioners.

KNIGHT, P. J., March 8, 1945.—In 1917 Henry K. Walt entered into an agreement with the two petitioning churches and their joint board of trustees to establish a trust fund to be held by Jenkintown Trust Company (now Jenkintown Bank & Trust Company) for the proper care and maintenance of a cemetery jointly owned by the churches and of the fences surrounding it and of the lots therein.

Pursuant to the agreement Walt paid in the sum of $5,000, the churches paid in a like amount, and subsequently other funds have been received by the trustee by way of legacies and voluntary contributions, so that at the time of filing this petition the principal aggregated $18,773.04, composed of bonds, mortgages, mortgage trust certificates, and a small amount of cash.

The trust agreement provides that the fund is to be held "perpetually, in trust to invest the same and keep

the same invested, and to pay over unto the joint Board of Trustees . . . the net income derived therefrom".

The trust agreement recited the understanding of the parties that the intention was for the "trustee to permanently hold and invest the said fund in order that it may forever be preserved and kept intact".

The agreement further provides: "4. That the said Board of Trustees, party of the third part, shall and will apply the said income, as and when received from the said trustee, for the proper care and maintenance of the said cemetery, the fences surrounding the same . . ."

The petition avers that Walt is deceased, and that the other parties desire that the trustee be directed to expend the sum of $1,000 of the principal for the purpose of building a new improved driveway from the highway to the cemetery. Such driveway is averred to be desirable because the existing driveway is impassable at certain seasons of the year, and because it would open additional land of the churches for cemetery use, providing additional lots, with a possibility of increasing the fund in the trustees' hands.

In the past six years the net income from the trust fund has averaged about $450 per year, but in 1944 was only $277.69. This sum is said to be inadequate properly to repair and maintain the cemetery in accordance with the agreement.

In support of their request, in which the trustee has joined, petitioners contend that such expenditure would be merely a transfer from one form of principal to another, and cite as authority for granting the petition the case of Longbotham's Estate, 346 Pa. 94 (1943). However in that case the will set up a trust to pay income to a son for life with remainder to nieces. The municipal authorities served notice that unless extensive repairs be made to certain real estate the buildings would be razed. In spite of certain language in the will that repairs were to be made from income, the

court directed the necessary expenditures to be made from principal, on the ground that the primary intention was to provide an income for the son, and that this purpose would be seriously impaired if only income were used for the purpose of making the extensive repairs necessary.

The court relied on A. L. I. Restatement of Trusts, §167(1), which provides: "The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust".

We cannot agree that this case is analogous to the Longbotham case or is governed by the quoted section of the Restatement. Here the sole purpose of the trust is to produce income which is to be turned over for maintenance and repair of the property of another. It is not a question of what funds, principal or income, may be used for the improvements of property constituting a portion of the trust. If the trustee were to give away $1,000 of the principal in its hands to improve property not a part of the trust, the effect would be to impair the purpose of the trust by diminishing the income, which as appears above is inadequate at present.

And, further, it does not appear that the conditions giving rise to this application constitute any change of circumstances from those existing when the trust was established. Nor could the expenditure be justified as a "repair", for the petition frankly states that it is desired for the purpose of "building a new, improved driveway".

There is nothing in the trust agreement which indicates that the entire cost of maintaining the cemetery

is to be borne by the trust fund; on the contrary, it is provided that certain graves are to receive preferential treatment.

If the prayer of the present petition were allowed, there is no valid reason why subsequent allowances should not be granted from the principal for other permanent improvements or to cover inadequacy of income, and eventually the purpose of the trust would be entirely defeated.

From all the cases we have examined, a deviation from the express terms of the trust will be permitted only if there is a change of circumstances, and then only to carry out the purpose of the trust. It would seem that the trustee might be able to further the trust purpose by investing in a mortgage on the cemetery or other church property, but under the circumstances we are constrained to deny the requested relief.

And now, March 8, 1945, for the foregoing reasons, the prayer of the petition is denied and the petition is dismissed.